IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                              No. CR 09-1374 RB

ROBERTO MEZA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Government's Petition for Revocation of Supervised Release (Doc. 381). Having carefully considered the submissions of counsel, evidence presented at the hearing of November 5, 2013, and relevant law, the Court GRANTS the Petition.

    **I.**    **Background**

On May 20, 2009, Defendant was charged with conspiracy to possess more than 500 grams of cocaine and more than 100 grams of heroin; four counts of possession of cocaine with intent to distribute; and one count of using a communications facility to facilitate a drug trafficking crime. (Doc. 1). Defendant pleaded guilty to Count 14, possession with intent to distribute cocaine, and Count 21, use of a communication facility to further the commission of a drug trafficking crime. (Doc. 150). On February 18, 2010, Defendant was sentenced to forty-eight months incarceration on Count 14, and fifty-one months incarceration on Count 21, to run concurrently, followed by three years supervised release. (Doc. 249). Defendant commenced his term of supervised release on March 5, 2013. (Violation Report of June 10, 2013). One of the

conditions of supervised release was that Defendant would not commit another federal, state, or local crime. (*Id.*)

On June 3, 2013, Defendant was involved in an altercation with Antonio Meza (no relation) in Anthony, New Mexico; and charged in state court with aggravated assault, attempted battery, and battery. *See State of New Mexico v. Roberto Meza*, D-307-CR-201300581, Third Judicial District, County of Doña Ana, State of New Mexico. On June 10, 2013, the Government filed a Petition for Revocation of Supervised Release. (Doc. 381). According to the United States Probation Office, the revocation imprisonment range is eighteen to twenty-four months. (Violation Report).

## II.     Summary of Evidence

At the evidentiary hearing on November 5, 2013, the Government presented the testimony of Doña Ana County Deputy Sherriff Ivan Zarate, Doña Ana County Deputy Sherriff Curtis Yarnell, New Mexico Adult Probation Officer William Lavoe, and United States Probation Officer George Herrera. The Court admitted Government's Exhibits 2, 3, 6, 8, and 12. The Defendant presented his own testimony. The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page numbers.

On June 3, 2013, Martha Hernandez, who lives at 1618 Lincoln Street in Anthony, New Mexico, called 911 to report that a man in a tall gray truck "burned tires" in front of her house and stopped around the corner at 351 Peña Street, which was the home of her daughter and her son-in-law, Antonio Meza (hereinafter "the victim"). (Gov't Ex. 2). Mrs. Hernandez sent her grandchildren to 351 Peña Street to see what was happening. (*Id.*) One of the children reported to Mrs. Hernandez that Defendant had a blade and a gun. (Gov't Ex. 2). Mrs. Hernandez informed

the 911 operator that she thought the driver of the truck was Defendant, but she was not sure. (*Id.*) Mrs. Hernandez was not a direct witness to the incident. (Tr. at 32).

Deputy Zarate testified that, on June 3, 2013, at about 11:00 p.m., he responded to the 911call placed by Mrs. Hernandez. (Tr. at 13-14). The victim reported to Deputy Zarate that he had been in his front yard of his home earlier that night along with his friend, Mr. Aguirre, when a gray Dodge Ram pickup truck passed in front of his residence in a reckless manner at a high rate of speed. (Tr. at 13-14). The driver of the truck waved at the victim and the victim waved back. (Tr. at 14). The truck continued to a stop sign at a nearby corner, reversed, came back, and parked in front of the victim's home, which is a mobile home parked parallel to Peña Street. (*Id.*) Defendant got out of the truck and confronted the victim and Mr. Aguirre in front of the victim's residence. (Tr. at 15).

Defendant indicated that he wanted to fight. (*Id.*) Mr. Aguirre got between Defendant and the victim in an effort to prevent a fight. (Tr. at 16). Defendant shook Mr. Aguirre's hand. (*Id.*) Defendant turned to the victim and appeared to offer to shake his hand. (*Id.*) The victim extended his hand and Defendant punched the victim. (*Id.*) The victim punched Defendant and Defendant fell to the ground. (Tr. at 17). Defendant got up and pulled a knife from a side pouch. (*Id.*) The knife appeared to be a utility knife that was blue or black in color. (*Id.*) Defendant told the victim that the victim had better show Defendant respect because Defendant was a gang member. (Tr. at 18). The victim believed that Defendant had stabbed or killed someone in the past. (Tr. at 19). The victim was afraid and feared for his three children, ages 5 to 12, who were present on the property during the incident. (Tr. at 20). Deputy Zarate saw vehicles belonging to the victim and the victim's wife outside the residence fairly recently, but he is unsure whether the victim still resides at 351 Peña Street. (Tr. at 44).

Deputy Yarnell testified at the hearing that he is assigned to the FBI gang task force and he knows of Defendant's gang affiliation. (Tr. at 43). Deputy Yarnell learned about the incident on June 5, 2013 during a tactical meeting. (*Id.*) On June 10, 2013, Deputy Yarnell filed a criminal complaint in state court charging Defendant with battery and obtained a warrant for Defendant's arrest. (Tr. 45). Deputy Yarnell arrested Defendant on June 13, 2013. (*Id.*) At the time of his arrest, Defendant had a black foldout knife with a three inch blade in his pocket. (*Id.*)

Deputy Yarnell contacted the victim about the incident. (Tr. at 48). The victim was hesitant to meet with Deputy Yarnell, but agreed to meet Deputy Yarnell at the FBI office in Las Cruces. (*Id.*) Deputy Yarnell interviewed the victim on June 17, 2013. (*Id.*) The victim stated that he was in front of his residence in Anthony, New Mexico talking with his friend. (*Id.*) Deputy Yarnell was unable to recall the friend's name, but believed it was something similar to Aguilera. (Tr. at 48; 58). A large silver Dodge pickup truck drove past his residence in a reckless manner. (Tr. at 50). The driver of the pickup truck waved towards the victim and the victim waved back. (*Id.*) The truck pulled up to the stop sign, which was thirty to forty yards from the front of the residence. (*Id.*) The driver reversed the truck, stopped in front of the victim's residence, and the driver exited the pickup truck. (*Id.*) The victim identified Defendant as the driver of the truck from a photographic lineup of six photographs. (Tr. at 51; Govt Ex. 6).

After Defendant exited the truck, some words were exchanged, Defendant shook hands with the friend, and Defendant punched the victim in the chest with his right fist. (Tr. at. 52). The victim punched Defendant, who fell to the ground. (Tr. at. 53). Defendant returned to his feet and pulled out a pocketknife or a utility knife that was blue or black in color. (Tr. at. 54). Defendant told the victim that he was a gang member and the victim needed to respect him. (*Id.*) The victim felt threatened by the knife. (*Id.*) Deputy Yarnell lost touch with the victim after the interview.

(Tr. at 58-59). Deputy Yarnell tried to contact the victim many times without success. (Tr. at 60-61).

New Mexico Adult Probation Officer William Lavoe testified that he supervised Defendant's probation, which had been imposed by the State of Texas for an aggravated assault in El Paso, Texas. (Tr. at 62-64). Officer Lavoe had placed Defendant on GPS monitoring due to his violent felony record and gang affiliation. (Tr. at 64). The GPS print out showed that Defendant traveled by 351 Peña Street ( the victim's home) on June 3, 2013, at 8:23 p.m., proceeded north to the intersection of Peña Street and Church Street, returned to 351 Peña Street, where he remained with some shifting in his location for approximately seven minutes until he proceeded north to the intersection of Peña Street and Church Street and left the area. (Gov't. Ex. 8).

United States Probation Officer George Herrera testified that, on March 5, 2013, Defendant was advised of his conditions of supervised release, including the condition that he not commit another federal, state, or local crime. (Tr. at 88-89).

Defendant testified that, on the evening of June 3, 2013, he was performing electrical repair work on his family's vacant, partially burned house at 1421 Lincoln Street. (Tr. at 100). Due to his 9:00 p.m. curfew, Defendant left 1421 Lincoln Street at about 8:30 p.m. to return to the place where he was staying in Anthony, Texas. (Tr. at 101; 103). Defendant drove by 351 Peña Street to go to a store on Church Street and buy candy for his children. (Tr. at 102). Defendant did not have a particular type of candy in mind, but he knew "exactly" what his children wanted. (Tr. at 102). Defendant stopped at 351 Peña Street to talk to his long-time friend, Ricardo Ariza. (Tr. at 103; 112). Defendant did not see anyone named Aguirre; the only person he recognized was Mr. Ariza. (Tr. at 102). Defendant and the victim "had words." (*Id.*)

5

The victim told Defendant to leave his property and Defendant responded that the street was not the victim's property. (Tr. at 103; 114). Defendant's tools and knife were in his truck. (Tr. at 114). Defendant left and returned to the place where he was staying in Anthony, Texas. (Tr. at 103; 114).

### III.     Discussion

At the hearing, Defendant objected to the testimony of Deputy Zarate and Deputy Yarnell as hearsay on due process grounds and cited to *United State v. Zentgraf*, 20 F.3d 906 (8th Cir. 1994) and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). (Tr. at 12). Defendant argued that the Government was required to show that the testimony was reliable and explain what efforts were made to obtain the testimony of the victim. (Tr. at 10-11). The Government responded that the Tenth Circuit allows the admission of hearsay without a showing of cause for the declarant's absence if the evidence is sufficiently reliable. (Tr. at 93-94). The Government cited to *Curtis v. Chester*, 626 F.3d 540, 545 (10th Cir. 2010), a parole revocation case. (*Id.*) Neither party cited to Federal Rule of Criminal Procedure 32.1(b), which governs the revocation of supervised release.

"Rule 32.1 was enacted to codify due process guarantees that apply to revocation hearings." *United States v. Ruby*, 706 F.3d 1221, 1226 (10th Cir. 2013) (citing *Curtis*, 626 F.3d at 545). The Tenth Circuit has explained Rule 32.1 "was designed to ensure at revocation hearings the [right] of defendants to an independent judicial officer and the right to adversary proceedings." *Ruby*, 706 F.3d at 1226. "In this way, the Rule embodies the holdings of two Supreme Court cases, *Morrissey v. Brewer*, 408 U.S. 471, (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973)." *Ruby*, at 1226.

The purpose of a revocation hearing is "to ensure that the decision to revoke a parolee or probationer's freedom is not based on erroneous information." *Id.* (citation omitted). To achieve

this aim, Rule 32.1 grants a defendant at a revocation hearing "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." FED. R. CRIM. P. 32.1(b)(2)(C). According to the Advisory Committee notes to the 2002 amendment to Rule 32.1, this provision "recognize[s] that the court should apply a balancing test at the hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses. The court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." FED. R. CRIM. P. 32.1 advisory committee's note (2002) (citing, inter alia, *Morrissey* and *Zentgraf*). Thus, the Court "at a revocation hearing may consider hearsay evidence as long as it makes the necessary 'interest of justice' determination." *Ruby*, 706 F.3d at 1225.

      The interest of justice did not require the victim to appear at the hearing. Deputy Zarate was unsure whether the victim still resides at 351 Peña Street. In fact, Deputy Yarnell testified that the victim was hesitant to cooperate and he was unable to contact the victim despite repeated efforts. Moreover, the victim's appearance at the hearing would not have added any meaningful information. The testimony of Deputy Zarate and Deputy Yarnell is sufficiently reliable as it is internally consistent in terms of the time, the place and the manner of the assault as described by the victim on the day of the incident and during the interview with Deputy Yarnell two weeks later. The testimony of Deputy Zarate and Deputy Yarnell is consistent with the GPS printout. The Court is impressed with the ability of the GPS monitoring system to show on paper that which the victim described, specifically, Defendant going by the residence on Peña Street in a northerly direction, stopping and backing up in a southerly direction, which is fully consistent with what the victim related. Additionally, the victim's descriptions of the knife were consistent and matched the characteristics of the knife found in Defendant's pocket at the time of his arrest.

Having observed Defendant's demeanor, the Court finds that his self-serving testimony was not credible. The evidence presented at the hearing by the Government is sufficiently reliable and the Court finds that the Government has proved by a preponderance of the evidence that Defendant is guilty of aggravated assault and battery as those offenses are defined in New Mexico statutes. *See* N.M.S.A. §§ 30-3-4 and 30-3-2. Thus, Defendant violated the terms of his supervised release.

Additionally, the Court takes judicial notice of the record and Defendant's Presentence Investigation Report. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (noting that the Court may "take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"). Defendant's Presentence Investigation Report establishes that Defendant is associated with the Barrio Azteca gang and he has violent criminal history dating back to 1994. The Court finds that this information reinforces its conclusion that the victim's statements were credible as related to the officers.

**THEREFORE,**

**IT IS ORDERED** that Government's Petition for Revocation of Supervised Release is **GRANTED**.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE